Randall Thomas Naves, Pro Se
1960 South Main
Tooele, Utah 84074

FILED IN UNITED STATES DISTRICT COURT, DISTRICT OF UTAH

AUG 08 2024

GARY P. SERDAR
CLERK OF COURT
BY_____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH    CENTRAL DIVISION

| | |
|---|---|
| RANDALL THOMAS NAVES, PLAINTIFF | PLAINTIFF'S RESPONSE TO DEFENDANT'S MARTINEZ REPORT |
| V | CASE NO. 2:22-CV-00695 |
| BRIAN NIELSON, ET AL, DEFENDANTS | JUDGE JILL N. PARRISH |

The Plaintiff received the Defendant's "Martinez Report" dated 22 July, 2024 on 3 August, 2024. As the Plaintiff is acting as his own attorney, the "Plaintiff's Actions Prior to the Move" (below) is written first person.

### PLAINTIFF'S ACTIONS PRIOR TO THE MOVE

In preparation for the move from the old prison site in Draper, Utah, to the new facility west of the Salt Lake City Airport, the Plaintiff acknowledges that the prison staff posted FD14 (Martinez Report Exhibit 6) in his housing unit on or about 31 May, 2022; thus giving us inmates time to dispose of excess materials. Shortly thereafter, they exchanged the metal storage boxes we had been using, with the plastic totes described in Martinez Report Exhibit 8.

As all my property fit inside this new tote, and I was within Property Matrix guidelines (having recently been moved to and from Davis County Jail), I was not worried about having anything confiscated, except for the shampoo which would be replaced.

The Plaintiff must now take what appears at first to be an off-topic and irrelevant diversion. It is on-topic and extremely relevant.

1 of 6

As an inmate, the plaintiff is often forced by circumstances to use the simplest, less-refined method of doing anything. While placing his "Book of Shadows" in a UDC-approved 3-ring binder might make it appear more permanent and durable (and less-hobby-craft); said 3-ring binder, per UDC policy, is not allowed to be sent with State inmates to any county jail that they may be housed in. Thus, for over twenty-years, the plaintiff had bound his "Book of Shadows" with toggles made from hairties. It was safe, secure, and functioned in a manner similar to a notebook (pages could be added and/or rearranged).

The plaintiff's "Book of Shadows", bound in the manner described above, had gone through countless cell-searches, inventories, and moves, including 2 stays at county jails. (6 months during 2007 at Davis County Jail; and 3½ years in Uintah County Jail). Unfortunately, upon being sent to Davis County Jail for a second time in November 2021, jail staff pawing through the plaintiff's property would not allow the toggles holding the plaintiff's "Book of Shadows" together into their facility... The contents of the plaintiff's "Book of Shadows" were allowed in; but were not given to the plaintiff. (See case No. 1:22-cv-00046 JNP).

Upon return to the prison in early December 2021 (21 days after arriving at Davis County Jail), the plaintiff was forced to find a replacement for the toggles which had held his "Book of Shadows" together... He braided a cord.

On 12 July, 2022, I was informed I was being transferred to the new prison the next day. Inside my tote, from the bottom-up were: a large plastic-pouch labeled "Expand-A-File" (another item that does-not transport); my "Book of Shadows". Sitting atop my "Book of Shadows" were my copies of "The Good Witches Bible", and "Wicca A Guide for the Solitary Practitioner"; side-by-side, they covered my "Book of Shadows" and were 2½" thick. Clothing covered my books and "Book of Shadows".

I took my tote to be sealed (later inspected); and, per instructions, retained my priviliged legal, public legal, and medications.

When it came time for the plaintiff to be transported, he was informed by the officer searching him and his retained legal papers, that the majority of his public legal papers were not necessarily legal, and would not be transported with him. These included: financial records, provided to him by law from his financial institutions; his proof of military service (DD-214's); and information provided to him by Social

security, telling him what he would be receiving (once he is released), along with the steps he had to take, in order to collect it. These, of course, had sensitive information within them (full name, date of birth, social security number, account numbers, etc). The transporting officer, rather than hand these items over to unit staff, simply left them in the unit's dayroom for anybody to find. Fortunately, these were found and and secured by staff, before any inmates could find them.

### AFTER THE MOVE

Upon receipt of his inventoried, inspected, and resealed tote, the plaintiff discovered 3-items which he expected to be there, missing, namely his "Book of Shadows", his "Good Witches Bible", and his "Wicca, A Guide for the Solitary Practitioner." Please note, that despite instructions to list books by title on the inventory sheets provided to the court, NO OFFICER has bothered to do this. The petitioner was not the only inmate to have items come up missing. They were told by the officer working on the unit to "write the Captain". They all assumed it was the unit Captain (Jared Beers), and not Captain Donovan Starks. They were also told to message their caseworkers and property.

On or about 28 July, 2022, the plaintiff and others were told to file a grievance about any items removed from their totes, which weren't considered contraband. Martinez Report Exhibit 3 shows that the plaintiff filed his grievance on 28 July 2022. Please note, this is after the plaintiff signed his disposition form for his "confiscated" public legal, and handed the property representative a signed money transfer for this transaction... later lost.①

### AFTER THE GRIEVANCE

Defendant Koch was already the property room representative servicing Bear 4 (the plaintiff's housing unit) when he filed his grievance (Martinez Report Exhibit 3). She was unable to explain, how the plaintiff went from having 2 books, to having just one. All she knew, is what had been delivered to property after the move/searches. She was the person the plaintiff had handed the original money transfer to, to ship his "confiscated" paperwork home. (There would be 2 money transfers for this, the original

---

① Although the plaintiff is unable to contact his brother at this time (his brother is not answering letters, and the plaintiff does not have the funds to call him to confirm dates) these papers were shipped and received weeks before the plaintiff's "Book of Shadows" left UDC property; despite what the paper-trail may imply.

getting lost. The second was signed and dated 13 September. This was also handled by Defendant Koch).

Despite the Plaintiff's heartfelt and repeated efforts to explain to Defendant Koch the importance of a Wiccan's "Book of Shadows" to them; she was just as adament that the Plaintiff's "Book of Shadows" was a "Hobbycraft item". She was also just as adament, that his "Book of Shadows" was not a "Book from a Publisher", including air-quotes as she spoke. This same "Book of Shadows" has been screened by hundreds of officers over the decades it had been in the Plaintiff's possession, including officers-in-training at the Acadamy, who know practically nothing; but they knew enough not to interfere with the Plaintiff's religious materials.

Following Defendant Koch's line of thinking: How is an item that each Wiccan produces themselves, ever going to qualify as a "Book" under UDC policy? The question is not just rhetorical; it is the basis for this lawsuit.

On 24 August, 2022, Defendant Koch considered this matter closed, submitting it to her supervisor, Defendant Carlson for signature. The Plaintiff was handed the staff response to his grievance to sign on 30 August, 2022... He was of the opinion that no good-faith effort had been made on by Defendants Koch or Carlson to resolve the matter, and circled NO, that the grievance HAD NOT been resolved. As far as the Plaintiff knew, his Book of Shadows was being sent off-property that day.

As the purpose of grieving was to keep his Book of Shadows from being sent off-property, and here it was, going merrily on its way; would any additional grieving through higher levels have prevented this? The Plaintiff thinks not.

It should be noted by the court, that until mid-October 2022, forms of any kind were extremely difficult to obtain in the Housing Sections in at least Bear 4. This was caused, in part, by the move. Another factor was lack of permanent staff, knowing where things were. As of March 2024, the prison was still dependant on paper forms versus electronic. As of 2017 the jails the Plaintiff has been housed at, have all their forms on their tablet systems.

Per policy, the Plaintiff had until 4 September, 2022 to file a Level 2 grievance... But without a form, what was he to do? At the same time, having already losing a book during the move (his "Good Witches Bible"). Having had a money transfer lost, after handing it directly to Koch for processing; is there any proof that the Plaintiff didn't deposit further grievances in the mail, only to have them conveniently lost? The Plaintiff cannot prove otherwise, either.

## CONCLUSION

In their statements (Martinez Report Exhibits 12 and 13), defendants Lund and Brockbader admit they don't normally work housing units, nor conduct cell searches, which going through the Plaintiff's tote generally amounted too... They did not know how to handle the Plaintiff's "Book of Shadows."

In her statement (Martinez Report Exhibit 14), defendant Carlson relied solely on defendant Koch's description of the Plaintiff's "Book of Shadows" as a "Hobbycraft" book, before she signed off on the resolution on 24 August, 2022. Had she actually seen the Plaintiff's "Book of Shadows" for herself, she might possibly have intervened in the grievance process, and returned the Plaintiff's "Book of Shadows" to him... But that is pure speculation on the part of the Plaintiff.

Counsel is concerned that the Plaintiff did not exhaust his administrative remedies... If counsel for the defense were in the Plaintiff's position, under the circumstances the Plaintiff was under, what would they have done? This is not like the case where UDC Medical refused to treat inmates Hepatitis-C or HIV; and forms and time were readily available; nothing was being sent off-property. Two Esbats and a Sabat had already passed, before the Plaintiff's grievance was summarily "resolved" by defendants Koch and Carlson.

Since 13 July, 2022, the Plaintiff, through the actions of the UDC and its staff, has been without his "Book of Shadows"; and therefore, has been unable to practice his religion in a meaningful manner, including rituals. Had the UDC returned the Plaintiff's "Book of Shadows" to him in August, 2022 when he initially grieved, this action could have been avoided. Due to the actions of the named defendants, in the name of following UDC policy and procedure, the Plaintiff has been forced into the position of having to sue to protect his constitutionally guaranteed religious rights. The Court, therefore, should find in the Plaintiff's favor.


Respectfully submitted this    FIFTH    day of August, 2024


_Randall Thomas Naves, pro se_

I HEREBY CERTIFY THAT ON    5    AUGUST, 2024, I MAILED A TRUE AND CORRECT COPY OF THE FOREGOING PLAINTIFF'S RESPONSE TO DEFENDANT'S MARTINEZ REPORT TO:

CHRISTIANA BIGGS
ASSISTANT ATTORNEY GENERAL
160 EAST 300 SOUTH
SALT LAKE CITY, UTAH 84116-0856


CLERK OF THE COURT
U.S. DISTRICT COURT
351 SOUTH WEST TEMPLE
SALT LAKE CITY, UTAH 84101


*/s/*
RANDALL THOMAS NAVES, PRO SE

RANDALL THOMAS NAVES
1960 SOUTH MAIN
TOOELE, UTAH 84074

SALT LAKE CITY UT 840
6 AUG 2024 PM 1 L



CLERK OF THE COURT
U.S. DISTRICT COURT
351 SOUTH WEST TEMPLE
SALT LAKE CITY, UTAH 84101

COUNTY JAIL
GENERATED MAIL

PRIVILEGED: LEGAL MAIL          84101-190899