IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| RANDALL THOMAS NAVES,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN NIELSON et al.,<br><br>Defendants. | **MEMORANDUM DECISION & ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:22-cv-00695-JNP<br><br>District Judge Jill N. Parrish |

Before the court is a motion for summary judgment filed by the remaining Utah Department of Corrections ("UDOC") defendants Mary Brockbader, Anna Lee Carlson, Nichole Koch, and Clinton Lund (collectively, "Defendants"). ECF No. 49 ("Defs.' Mot."). Plaintiff Randall Thomas Naves ("Plaintiff") asserts Defendants violated his federal constitutional rights by depriving him of religious books while he was imprisoned by UDOC. ECF No. 7 ("Pl.'s Compl."). Defendants now move for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act. Defendants filed a *Martinez* Report to support their motion that includes declarations, UDOC's grievance policy, and Plaintiff's grievances. ECF No. 39 ("Martinez Report"). Meanwhile, Plaintiff's responses to Defendants' *Martinez* report and summary judgment motion provide no evidence, except for a blank grievance form. ECF Nos. 44, 50-1. For the reasons set forth below, the court GRANTS Defendants' motion for summary judgment.

Plaintiff also moves for default judgment, to appoint counsel, and to reinstate Utah Department of Corrections as a defendant. ECF Nos. 36, 43, 52. The court considers these motions in this order below.

## UNDISPUTED MATERIAL FACTS[1]

**1.** At the relevant time, Defendants were employed by UDOC. Pl's Compl.

**2.** At the relevant time, Plaintiff was a Wiccan, imprisoned by UDOC. *Id.*

**3.** While transferring Plaintiff from one facility to another, Defendants were involved in removal from Plaintiff's property of two books of religious significance to Plaintiff. *Id.*

**4.** UDOC's grievance policy has three levels, with "[f]ixed time limitations . . . applicable to each level." ECF No. 39-7 ("Grievance Policy"), at 2, 7.

**5.** UDOC's policy states, "If the Level I (Informal) attempt to resolve the grievance fails, the offender shall have five business days to complete Page 2 of the Grievance form I and submit it . . . to the Offender Grievance Coordinator for the Level II designee." *Id.* at 8.

**6.** On July 28, 2022, Plaintiff signed a Level I grievance (number 990914677) asserting that his religious books did not make it from one housing unit to the other during his transfer between institutions. ECF No. 40-3 ("Level I Grievance"), at 4. Plaintiff sought the remedy of having "his books returned." *Id.* at 2. Plaintiff "knew ahead of time that he would not be able to complete Levels II or III." ECF No. 50 ("Pl.'s Opp."), at 2.

**7.** Between August 23 and 30, 2022, Defendant Koch, Defendant Carlson, and Plaintiff signed the Level I grievance response. Level I Grievance at 2-3.

---

[1] These undisputed material facts are designated as such only for this Order's purposes.

**8.** On September 6, 2022, the deputy warden/designee signed Plaintiff's Level I grievance form. *Id.* at 3.

**9.** On September 13, 2022, one of Plaintiff's books (that was a subject of the grievance) was shipped away from the prison. ECF No. 40-8 ("UDOC Property Release Form").

**10.** Plaintiff "did not appeal his Level 1 grievance" denial. ECF No. 40-12 ("Carlson Decl.") ¶ 12.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[A] mere factual dispute will not preclude summary judgment; instead there must be a genuine issue of material fact." *Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000). The court "look[s] at the factual record and the reasonable inferences to be drawn from the record in the light most favorable to the non-moving party." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006).

"Once the moving party has identified a lack of a genuine issue of material fact, the nonmoving party has the burden to cite to specific facts showing that there is a genuine issue for trial." *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (internal quotation marks omitted). "Those specific facts must be supported by particular parts of materials in the record; relying on mere pleadings is insufficient." *Id.* (internal quotation marks omitted). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Self*, 439 F.3d at 1230 (internal quotation marks omitted).

Because Plaintiff is proceeding *pro se*, his pleadings are liberally construed, "applying a less stringent standard than is applicable to pleadings filed by lawyers. Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal

3

theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). This means that if this court can reasonably read the pleadings "to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Still, it is not "the proper function of the district court to assume the role of advocate for the *pro se* litigant." *Id.*; *see Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998).

## ANALYSIS

In their motion for summary judgment, Defendants argue that Plaintiff's action is barred under the Prison Litigation Reform Act ("PLRA" or "the Act") because he failed to exhaust his administrative remedies. The court agrees.

**I.   LEGAL PRINCIPLES OF ADMINISTRATIVE EXHAUSTION**

In passing the PLRA, Congress "impos[ed] a strict administrative-exhaustion requirement . . . [on] civil-rights claims filed by prisoners." *Pakdel v. City and Cnty. of San Francisco*, 594 U.S. 474, 481 (2021) (per curiam) (citing 42 U.S.C.S. § 1997e(a) (2025)). Under the Act, "No action shall be brought with respect to prison conditions under [42 U.S.C.S. § 1983 (2025)], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.S. § 1997e(a) (2025). The Supreme Court has often emphasized, "[T]hat language is 'mandatory.'" *Ross v. Blake*, 578 U.S. 632, 638 (2016). Thus, the exhaustion requirement under the Act is not "left to the discretion of the district court." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

The Supreme Court has also held that the PLRA requires "proper exhaustion." *Id.* at 90. And proper exhaustion "requires compliance with deadlines and other critical procedural rules,

4

with no exceptions for special circumstances." *Ramirez v. Collier*, 595 U.S. 411, 421 (2022) (internal quotation marks omitted). To properly exhaust all remedies, a prisoner must use "all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90. In this way, the rules are defined not by PLRA, but by the prison grievance process itself. *See Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) ("Because the prison's procedural requirements define the steps necessary for exhaustion, an inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure." (cleaned up)).

Failure to exhaust is an affirmative defense that Defendants must allege and prove. *See Jones*, 549 U.S. at 204. But once a defendant has met the burden of proving the plaintiff did not exhaust administrative remedies, the burden shifts to the plaintiff to "show the remedies were unavailable to him." *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019). A remedy may be unavailable when (1) "it operates as a simple dead end," (2) the "administrative scheme . . . [is] so opaque that it becomes, practically speaking, incapable of use," or (3) "prison administrators thwart inmates from taking advantage of the grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-44.

## II. PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES

With this backdrop of law and facts, the court concludes that it is undisputed that UDOC had a grievance process and Plaintiff was required to complete that grievance process, as available, before bringing this federal civil-rights action. The undisputed evidence further shows that Plaintiff did not file grievances to Levels II or III, as required by UDOC policy. And Plaintiff concedes this fact. Therefore, Defendants have met their burden of showing Plaintiff failed to exhaust administrative remedies.

### III.  PLAINTIFF HAS NOT DEMONSTRATED THAT REMEDIES WERE UNAVAILABLE

Because Defendants have met their burden of showing that Plaintiff failed to exhaust UDOC's administrative remedies, the burden shifts to Plaintiff to show that remedies were unavailable to him. Plaintiff argues that remedies were unavailable to him because he did not receive his Level I grievance form back in time to fill out a Level II grievance. *See* Pl.'s Opp. Plaintiff also contends that he was not required to exhaust his remedies because the grievance process was futile as it could not provide the remedy he requested. *See id.* The court addresses each argument below.

Plaintiff first argues that he was not given a copy of the response to his Level I grievance form in time to file a Level II grievance. Defendant Koch signed the grievance response on August 23, 2022. Level I Grievance at 2. Defendant Carlson, acting as "staff supervisor," signed the grievance response on August 24, 2022. *Id.* at 3. Defendant Kahn and Plaintiff both signed the grievance response on August 30, 2022, at which time Plaintiff indicated that the grievance had not been resolved. *Id*. And the deputy warden/designee signed the grievance response on September 6, 2022. *Id*. Plaintiff asserts that he did not get "a copy of the completed form (grievance Level I and staff response), with the deputy warden's signature" until "five days after the deputy warden signed the form/when a Level II grievance was due." Pl.'s Opp. at 2.

The latter statement--that Plaintiff was not given his copy of the signed grievance response until five days after the deputy warden's signature was affixed--is what undercuts his entire argument. He says that was "per design" to keep him from being able to file a Level II grievance. *Id.* at 1. He states that

> Page 2 of the grievance form, which moves the grievance forward from Level I to Level II, is located on the back of the Level I grievance form. It is impossible to move forward, until after the

> Level I grievance is returned to the inmate. The plaintiff would not
> receive his copy of the completed form until after the deputy warden
> had signed off on it.

*Id.* at 3. Plaintiff concludes this argument by contending "[t]hese intentional delays by staff make it impossible for the plaintiff . . . to stay within the UD[O]C established policy deadlines for filing Level II and III grievances," because "filing a grievance late, at any level, is prohibited by policy." *Id.* But there are several fatal flaws in Plaintiff's argument.

First, he provides no evidentiary support for his statement that he did not receive his grievance response until five days after the deputy warden signed it. This failure was in contravention to the summary-judgment rule provided him in this court's Order of February 13, 2024. ECF No. 21. The relevant passage from the rule says that facts asserted by a party must be supported by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). Thus, Plaintiff has not offered any evidence demonstrating a dispute of fact to survive summary judgment.

Second, even under Plaintiff's timeline, he still had time to submit a Level II grievance. If Plaintiff did not receive the grievance response until five days--and he did not indicate these were "business days"--after the deputy warden signed it, he would not have been out of time to file a Level II grievance. This is because UDOC's grievance policy states, "If the Level I (Informal) attempt to resolve the grievance fails, the offender shall have five business days to complete Page 2 of the Grievance form I and submit it . . . to the Offender Grievance Coordinator for the Level II designee." Grievance Policy at 8. The deputy warden/designee signed the Level I grievance response on Tuesday, September 6, 2022. Level I Grievance at 3. Five days later, when Plaintiff

allegedly received back the Level I response, was Sunday, September 11, 2022. But five *business* days later was Tuesday, September 13, 2022. Thus, under Plaintiff's timeline, he still had two business days left to submit his Level II grievance.

Third, out of an abundance of caution to meet the deadline, Plaintiff could have obtained a blank grievance form, like the one he attached as an exhibit to his Response to Defendants' Motion for Summary Judgment, placed the grievance number on it, written why the Level I response was "unacceptable," and signed and filed it. Afterall, having already seen and signed the grievance response on August 30, 2022, and deemed it unresolved, he had all the information he needed to proceed with his Level II grievance.

And finally, Plaintiff's entire first argument does not meet any of the three categories the Supreme Court has recognized make a grievance process "unavailable." Plaintiff has not shown that UDOC's grievance process "operate[d] as a simple dead end." *Ross*, 578 U.S. at 643-44. He did not even attempt at *any* point to file a Level II grievance, thus failing to demonstrate his search for a remedy was a dead end. He also has not put forth *any* facts to show the process was "so opaque that it becomes, practically speaking, incapable of use," or that "prison administrators thwart[ed him] from taking advantage of the grievance process through machination, misrepresentation, or intimidation." *Id.* Although he argues that prison staff intentionally delayed the process, he puts forth no evidence to demonstrate as such. Arguing that he failed to receive his Level I grievance form after the Level II grievance was due, even if this were true and supported by evidence, is not enough to show the grievance process was unavailable.

Plaintiff next argues that he was not required to exhaust his remedies because UDOC could not provide him the remedy he sought, to have his "Book of Shadows" returned. Specifically, he alleges, "Paragraph 15 of the defendants' motion for summary judgment makes it perfectly clear

8

that no amount of grieving was going to allow the plaintiff's 'Book of Shadows' to be returned to him." Pl.'s Opp. at 3. Indeed, according to Plaintiff, at his meeting with Defendant Koch on August 30, 2022, "she made it clear . . . that his 'Book of Shadow' would be leaving the property as soon as possible" and "to the plaintiff, that meant that day or the next." *Id.* at 4. Plaintiff thus purportedly believed filing a Level II grievance to be futile. *Id.* Still, the book was not shipped away until September 13, 2022.

A plaintiff must "exhaust administrative remedies even where the relief sought [] cannot be granted by the administrative process." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 734 (2001) (holding that Congress' removal of the word "effective" "mandated exhaustion . . . regardless of the relief offered through the administrative process." Congress intended to broaden exhaustion requirements and prevent plaintiffs from "skip[ping] the administrative process simply by limiting prayers for relief to money damages not offered through administrative grievance mechanisms."). Therefore, even if Plaintiff's "Book of Shadows" would not be returned to him, he was still required under the PLRA to file a Level II grievance. And Plaintiff did not.

Further, the record shows that Plaintiff's book was not shipped away before he could submit a Level II grievance. Plaintiff's mere internal supposition about the timeline for the "Book of Shadows" to be shipped away from the prison does not control whether he needed to exhaust his administrative remedies. And the undisputed material facts were that Plaintiff knew on August 30, 2022 that his grievance was denied and UDOC employees intended to send away his book. The book was then shipped away on September 13, 2022. So, even under Plaintiff's flawed argument that it was futile for him to grieve because his book's shipping date was imminent, he

actually could have filed a Level II grievance within the two weeks between when he knew his grievance was denied and the date the book was shipped.

Plaintiff's arguments that he did not appeal his denied Level I grievance because he believed grievance appeals were futile does not satisfy his burden of showing that UDOC's grievance process was "unavailable" to him. He was therefore not authorized to circumvent the identified benefits of exhaustion, which "include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219 (citing *Woodford*, 548 U.S. at 88-91; *Porter*, 534 U.S. at 524-525). The court therefore GRANTS Defendants' motion for summary judgment.

## IV.   PLAINTIFF'S REMAINING MOTIONS

Plaintiff also moves for default judgment, to appoint counsel, and to reinstate Utah Department of Corrections as a defendant. ECF Nos. 36 ("Default Mot."), 43 ("Mot. Appoint Counsel"), 52 ("Mot. Reinstate Def."). The court considers these motions below.

First, the court DENIES Plaintiff's Motion for Default Judgment because Defendants timely answered the Complaint. ECF Nos. 7, 21-22, 29-32, 37. Because Defendants' deadline to respond to the complaint fell on Saturday, April 20, 2024, Defendants had until April 22, 2024 to respond to the complaint in accordance with the Federal Rules of Civil Procedure. FED. R. CIV. P. 6(a)(1)(c) (". . . if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."). Plaintiff failed to consider this rule into his calculation of the deadline.

The court also DENIES Plaintiff's Motion to Appoint Counsel for the same reasons stated in the prior order denying appointment of voluntary *pro bono* counsel. ECF Nos. 4, 6. Finally, the

court DENIES Plaintiff's Motion to Reinstate Utah Department of Corrections ("UDOC") as a Defendant/Responsible Party for the same reasons stated in its prior order dismissing UDOC. ECF No. 21. The court also denies the motion on futility grounds since it would be subject to the same failure to exhaust administrative remedies argument that resulted in dismissal of the remaining claims.

## CONCLUSION AND ORDER

The court concludes that Plaintiff's claims are barred by the Prison Litigation Reform Act because he failed to exhaust administrative remedies. The court therefore ORDERS as follows:

1. The court **GRANTS** Defendants' Motion for Summary Judgment. ECF No. 49.
2. Plaintiff's action is **DISMISSED WITHOUT PREJUDICE**.[2]
3. The court **DENIES** Plaintiff's Motion for Default Judgment. ECF No. 36.
4. The court **DENIES** Plaintiff's Motion to Appoint Counsel. ECF No. 43.
5. The court **DENIES** Plaintiff's Motion to Reinstate Utah Department of Corrections as a Defendant/Responsible Party. ECF No. 52.

DATED March 21, 2025

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge

---

[2] Generally, "courts should . . . dismiss . . . unexhausted claims without prejudice." *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1113 (10th Cir. 2007).